IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:25-CV-00023

UNITED STATES OF AMERICA and
THE STATE OF NORTH CAROLINA,

     Plaintiffs,

v.

BENSON I. EJINDU,

     Defendant.

_____

## THE UNITED STATES AND STATE OF NORTH CAROLINA'S COMPLAINT AND DEMAND FOR JURY TRIAL

The United States of America and the State of North Carolina bring this action against Defendant Benson I. Ejindu.

## I.    INTRODUCTION

1.    This is a civil action brought by the United States and the State of North Carolina against Defendant Benson Ejindu to recover treble damages and civil penalties under the federal False Claims Act, 31 U.S.C. §§ 3729-3733, and the North Carolina False Claims Act, N.C.G.S. §§ 1-605-618, and to recover damages under the common law theories of unjust enrichment and payment by mistake.

2.    As set forth below, from at least May 19, 2017, through August 23, 2019, Benson Ejindu, through a durable medical equipment business that he operated under different names, knowingly submitted or caused to be submitted claims to North Carolina Medicaid that were false or fraudulent because the claims were

upcoded, meaning the claims sought reimbursement from North Carolina Medicaid for more expensive medical supplies than were provided to Medicaid recipients. Specifically, as set forth below, Ejindu submitted or caused the submission of false claims to Medicaid for high-reimbursing, specialized nutritional formula for individuals with rare, inherited metabolic disorders when Ejindu knew the Medicaid recipients actually received lower-reimbursing Ensure, PediaSure, Boost, and Glucerna drinks.

3.     As part of the scheme, Ejindu knowingly made, used, or caused to be made or used false statements to North Carolina Medicaid in the form of false billing codes that misrepresented the products being provided to the beneficiaries and false certifications that the claims truthfully and accurately described the items for which reimbursement was due.  Ejindu also was unjustly enriched by amounts that he received through the durable medical equipment business for the false claims and is liable for payment by mistake through his control of the business that received payments for the false claims.

## II.    <u>PARTIES</u>

4.     The United States brings this action on behalf of the Department of Health and Human Services ("HHS") and its component the Centers for Medicare & Medicaid Services ("CMS").  HHS through CMS co-funds Medicaid, a federal-state program that provides health care benefits for certain groups, primarily the poor and disabled.

5.     The State of North Carolina brings this action on behalf of the North Carolina Department of Health and Human Services ("DHHS"), Division of Health

Benefits ("DHB"). DHB administers the Medicaid program in North Carolina ("North Carolina Medicaid").

6.     Defendant Benson I. Ejindu ("Ejindu") is a resident of Union County, North Carolina. In the period from May 19, 2017, through August 23, 2019, Ejindu operated a durable medical equipment business within Union County and Mecklenburg County, North Carolina, using the business names Joy Medical Supply ("Joy Medical") and AsaAsa Medical Supply and Home Oxygen ("AsaAsa"). Neither Joy Medical nor AsaAsa are registered business entities in North Carolina; however, a National Provider Identifier ("NPI") used to bill Medicaid was issued to each business name.

## III.    <u>JURISDICTION AND VENUE</u>

7.     This action arises under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, North Carolina False Claims Act ("NCFCA"), N.C.G.S. §§ 1-605-618, and under the common law theories of unjust enrichment and payment by mistake. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1345 because this action is brought by the United States as Plaintiff pursuant to the FCA. This Court has supplemental jurisdiction with respect to the state law claims under 28 U.S.C. § 1367(a) and 31 U.S.C. § 3732(b) and supplemental jurisdiction to entertain the common law claims under 28 U.S.C. § 1367(a) as the state law and common law claims are part of the same case or controversy as the underlying federal claims.

3

8. This Court may exercise personal jurisdiction over Ejindu pursuant to 31 U.S.C. § 3732(a) because he resides or transacts business in the Western District of North Carolina.

9. Venue is proper in the Western District of North Carolina under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and (c) because Ejindu resides or transacts business in this District.

10. The claims against Ejindu are timely brought due to the dates of the alleged violations and pursuant to Ejindu's written agreements with the United States and the State of North Carolina that the period of time between May 11, 2023, and January 11, 2025, shall be excluded when determining whether any civil claims are time-barred by the statute of limitations or any other time-related defense to any civil action against Ejindu based on upcoding enteral nutritional formula.

## IV. LEGAL BACKGROUND

### A. The False Claims Act

11. The FCA establishes liability to the United States for any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(1)(B).

12. Individuals or entities who violate the FCA are liable to the United States for treble damages, plus a civil penalty per violation. *Id.* § 3729(a)(1); *see also* 28 C.F.R. § 85.5 (setting forth the minimum and maximum amount of penalty per

violation occurring after November 2, 2015, based on the date the penalty is assessed).

13.     The FCA is intended to reach all types of fraud, without qualification, that might result in financial loss to the government. *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003).

14.     Upcoding, or billing for a more expensive good or service than provided, is a type of fraud that may be remedied by the FCA. *See United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 196–97 (4th Cir. 2022).

15.     For purposes of the FCA, a defendant may be liable not only when it presents false claims to the government, but also when it "causes [such claims] to be presented." *Id.* § 3729(a)(1)(A).

16.     Under the FCA, "knowing" and "knowingly" are defined to include actual knowledge, reckless disregard, or deliberate indifference. *Id.* § 3729(b)(1). No proof of specific intent to defraud is required. *Id.*

17.     The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* § 3729(b)(4).

18.     The standard of proof under the FCA is preponderance of the evidence. *Id.* § 3731(d).

**B.     The North Carolina False Claims Act**

19.     The NCFCA is largely modeled after the FCA. Like its federal counterpart, the NCFCA establishes liability to North Carolina for any person who

"knowingly presents or causes to be presented a false or fraudulent claim for payment or approval," N.C.G.S. § 1-607(a)(1), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 1-607(a)(2).

20.     Individuals or entities who violate the NCFCA are liable to the State for treble damages, plus a civil penalty per violation. *Id.* § 1-607(a).

21.     For purposes of the NCFCA, a defendant may be liable not only when it presents false claims to the State, but also when it "causes [such claims] to be presented." *Id.* § 1-607(a)(1).

22.     The NCFCA defines "knowing" and "knowingly" to include actual knowledge, reckless disregard, or deliberate ignorance.  No proof of specific intent to defraud is required. *Id.* §1-606(4).

23.     The NCFCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* §1-606(5).

24.     The standard of proof under the NCFCA is preponderance of the evidence. *Id.* § 1-615(c).

## V.     <u>THE NORTH CAROLINA MEDICAID PROGRAM</u>

### A.     <u>Medicaid Program Rules</u>

25.     The Medicaid Program was enacted by Congress on July 30, 1965, under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*  The Medicaid Program is co-funded by the United States and state governments, including the State of North Carolina.  Medicaid enables the states, including the State of North Carolina, to

6

provide medical assistance and related services to indigent individuals, including children and disabled individuals. The Medicaid program covers, *inter alia*, the cost of durable medical equipment.

26. In North Carolina, the Medicaid program is administered by DHB. A substantial portion of the DHB budget is funded by HHS, which periodically reimburses DHB for the federal share of all qualified Medicaid claims.

27. When a health care provider enrolled in North Carolina Medicaid provides goods or services to a Medicaid recipient, the provider bills the North Carolina Medicaid program through DHB for those goods or services. DHB in turn reimburses the provider via dedicated government Medicaid funds established by the state and federal governments.

28. "To be eligible to bill" North Carolina Medicaid for medical supplies, including enteral nutritional products, the provider "shall meet" Medicaid "qualifications for participation." Section 6.0 of N.C. Medicaid Clinical Coverage Policy No. 5A-1, Physical Rehabilitation Equipment and Supplies; Section 6.0 of N.C. Medicaid Clinical Coverage Policy No. 5A-2, Respiratory Equipment and Supplies; Section 6.0 of N.C. Medicaid Clinical Coverage Policy No. 5A-3, Nursing Equipment and Supplies.

29. "[T]o qualify for participation with Medicaid," a provider of medical supplies "shall be enrolled with Medicaid as a Durable Medical Equipment and Supplies provider." Section 6.1 of N.C. Medicaid Clinical Coverage Policy No. 5A-1, Physical Rehabilitation Equipment and Supplies; Section 6.1 of N.C. Medicaid

7

Clinical Coverage Policy No. 5A-2, Respiratory Equipment and Supplies; Section 6.1 of N.C. Medicaid Clinical Coverage Policy No. No. 5A-3, Nursing Equipment and Supplies.

### B. **Medicaid Provider Agreement**

30. To enroll in Medicaid, a provider of medical supplies must execute a Provider Administrative Participation Agreement, which is also referred to as the "NC Tracks Provider Enrollment Agreement" or "Provider Agreement."

31. In the Medicaid Provider Agreement, the provider agrees to numerous terms and conditions, including agreements to:

    a. Submit claims for services rendered to North Carolina Medicaid beneficiaries "in accordance with the rules and billing instructions in effect at the time the service is rendered";

    b. "[B]e responsible for research and correction of all billing discrepancies in claims submitted";

    c. "[R]efund or allow the Department to recoup or recover" any amounts received in error or excess of the amount to which the provider was entitled within 30 calendar days of discovery; and

    d. Submit "true, accurate, and complete" claims.

32. In the Medicaid Provider Agreement, the provider also agrees that "all claims are subject to the North Carolina False Claims Act" and "the federal False Claims Act."

33. In the Medicaid Provider Agreement, the provider further acknowledges that claims are paid from federal and state funds.

8

### C.     **Medicaid Claims Submission**

34.     Providers furnishing medical goods or services to North Carolina Medicaid patients submit claims for reimbursement electronically through the DHB system known as "NC Tracks" or by means of paper claims.

35.     Claims for reimbursement for providing goods or services to a Medicaid recipient generally must include the provider's name and identification number, the patient's name and Medicaid identification number, and a billing code that describes the item or service being billed.  Durable medical equipment is billed to Medicaid using codes that are part of the Health Care Procedure Coding System ("HCPCS").

36.     There are numerous HCPCS codes for durable medical equipment.  Each HCPCS code is associated with a description of a healthcare item.  Medicaid periodically publishes fee schedules that list the reimbursement rate for each HCPCS code.

37.     It is important that the HCPCS code that the provider enters on the claim accurately describes the item provided to the Medicaid recipient (also referred to as a Medicaid beneficiary) because the code determines how much money Medicaid will pay the provider for the item.  A provider may not improperly increase the money that it receives from Medicaid by entering an HCPCS code for a more expensive item than the item that is provided.

38.     When submitting a claim, the provider certifies that, among other things, the claim is "true, accurate and complete" and that the services for which

9

reimbursement are sought were medically indicated and necessary to the health of the patient.

39.     Once DHB receives and adjudicates a claim, payment is made to the provider by a check mailed to the Provider's address, or alternatively, by electronically depositing funds into the provider's designated bank account.

40.     Because it is not feasible for Medicaid to review medical records corresponding to each claim that it receives from providers, Medicaid relies on providers to comply with the Medicaid requirements and submit truthful and accurate certifications and claims.

### D.     Medicaid Billing for Enteral Nutritional Formula

41.     The North Carolina Medicaid durable medical equipment fee schedules in effect in the period from May 19, 2017, through August 23, 2019, described twelve reimbursable enteral nutritional formulas.

42.     The descriptions of enteral nutritional formula in the Medicaid fee schedules during the relevant time period differentiated the formulas based on whether the formulas were for pediatric patients, nutritionally complete, manufactured with blenderized natural foods, contained intact nutrients or hydrolyzed proteins, were calorically dense or soy based, or were for special metabolic needs for inherited diseases of metabolism.

43.     Next to each enteral nutritional formula description in the fee schedule was a unique HCPCS code for the described formula along with the rate of Medicaid reimbursement per 100 calorie unit of the formula.

44.     In the Medicaid fee schedules in effect during the relevant time period, two formulas that reimbursed the highest were described as formulas for "special metabolic needs for inherited disease of metabolism," identified by HCPCS codes B4157 and B4162 (pediatric).

45.     Inherited diseases of metabolism, also referred to as inborn errors of metabolism, are rare, genetic disorders characterized by deficiencies or defects in enzymes needed for normal metabolism resulting in malnourishment or the accumulation of toxic substances in the body.

46.     Specialized enteral nutritional formulas have been developed for certain inherited diseases of metabolism which eliminate the compounds that cannot be metabolized from foods due to the enzyme deficiency.  These specialized formulas help maintain safe levels of otherwise toxic compounds in the blood.

47.     Enteral formulas for special metabolic needs for inherited disease of metabolism were sold under various product names during the relevant time period, including Cyclinex, Glutarex, and Valex.

48.     The enteral nutritional formulas with the lowest reimbursement rates in the Medicaid fee schedules in the period from May 19, 2017, through August 23, 2019, were described as calorically dense enteral formulas, identified by HCPCS codes B4152 and B4160 (pediatric).

49.     Calorically dense enteral nutritional formulas are designed for patients with elevated caloric requirements or fluid restrictions, which may arise for a variety of reasons, such as if the patient is recovering from surgery or has kidney disease.

11

50. Calorically dense enteral nutritional formulas sold during the relevant time period included Ensure and Boost products.

51. The cost to purchase Cyclinex, Glutarex, Valex, and other specialized enteral formula for inherited disease of metabolism was generally higher than the cost to purchase calorically dense formulas such as Ensure, PediaSure, Boost, as well as enteral nutritional products such as Glucerna, which are designed to enhance glucose control for patients with diabetes.

52. In the period from May 2017 to March 2019, Medicaid reimbursed up to about 245 percent more per 100 calorie unit for enteral formula for inherited disease of metabolism than for calorically dense products such as Ensure and Boost. Beginning in April 2019, Medicaid reimbursed up to about 554 percent more per unit of formula for inherited disease of metabolism than for calorically dense formula.

## VI. BENSON EJINDU'S FRAUDULENT CONDUCT

### A. Benson Ejindu operated a durable medical equipment business that sought reimbursement from North Carolina Medicaid.

53. In the period prior to May 19, 2017, through August 23, 2019, Benson Ejindu operated a durable medical equipment business that sought reimbursement from North Carolina Medicaid for various items, including enteral nutritional formula. From prior to May 2017, through January 17, 2018, Ejindu's business sought reimbursement from Medicaid using the business name Joy Medical, and from June 7, 2017, through August 23, 2019, Ejindu's business sought reimbursement using the name AsaAsa.

12

54. On November 14, 2012, Ejindu executed a North Carolina Medicaid Provider Agreement for Joy Medical. In the agreement, Ejindu identified himself as the owner and CEO of Joy Medical. By executing the Agreement, Ejindu agreed to submit claims to Medicaid through Joy Medical "in accordance with the rules and billing instructions in effect at the time the service is rendered," be "responsible for research and correction of all billing discrepancies," refund or allow Medicaid to recoup any reimbursements in excess of the amount to which he was entitled, and to submit "true, accurate, and complete" claims.

55. Ejindu executed or was involved in the execution of North Carolina Medicaid Provider Enrollment applications for AsaAsa on October 31, 2016, and May 19, 2017. While the applications were submitted under the name Carol Iwuchukwu, Ejindu's sister, Ejindu's email address and phone number were listed for Iwuchukwu or AsaAsa on both AsaAsa applications. In addition, by executing or being involved in the execution of the AsaAsa applications, Ejindu was aware of the agreement that AsaAsa made as a condition of enrollment to submit truthful and accurate claims to Medicaid.

56. Throughout the relevant time period, Benson Ejindu managed and controlled the business that operated under the names Joy Medical and AsaAsa. The phone and fax numbers on AsaAsa communications to physician offices were the same office phone and fax numbers that Ejindu listed in the Joy Medical Medicaid Provider Agreement.

13

57.     In 2018, the North Carolina Board of Pharmacy issued a single Durable Medical Equipment permit to "ASAASA/Joy Medical Supply."

58.     Ejindu ordered medical supplies for the business, including Ensure, PediaSure, and Boost, for shipment to "AsaAsa/Joy Medical Supply."  The business did not keep a separate inventory or stock of supplies for Joy Medical and AsaAsa. All the supplies for which reimbursement was sought through Joy Medical and AsaAsa were commingled and stored in the same room.

59.     The same individual served as the administrative assistant and biller for both Joy Medical and AsaAsa throughout the relevant time period.  Ejindu supervised the administrative assistant and biller for Joy Medical and AsaAsa. Ejindu determined which HCPCS code would be used to bill Medicaid for medical supplies.  The administrative assistant and biller directed questions from customers to Ejindu, whether they were calling as customers of Joy Medical or AsaAsa.  When Joy Medical was terminated by Medicaid in January 2018, AsaAsa billed Medicaid for medical supplies to customers whose supplies had been billed through Joy Medical.

60.     Ejindu wrote and signed checks from AsaAsa's bank accounts, including checks made payable to Ejindu's businesses and family members.  Payments from AsaAsa's account for Ejindu's benefit include a $8,000 check dated October 31, 2018, to Mr. Ejindu's real estate investment company; a $9,000 check to Ejindu's daughter dated December 26, 2018; a $20,000 check to Ejindu's real estate investment company

14

dated May 31, 2018; a $280,000 check to Joy Medical dated April 3, 2019; and a $50,000 check to Joy Medical dated April 26, 2019.

**B.** **Benson Ejindu submitted or caused the submission of claims to North Carolina Medicaid for more expensive enteral formulas than were provided to Medicaid beneficiaries.**

61.     During the relevant time period, Ejindu ordered and provided Ensure, PediaSure, Boost, and Glucerna nutritional formulas to Medicaid beneficiaries through Joy Medical and AsaAsa.

62.     Ensure, PediaSure, Boost, and Glucerna are not formulas for inherited disease of metabolism.  During the relevant time period, neither Joy Medical nor AsaAsa provided formulas for inherited disease of metabolism to Medicaid beneficiaries.

63.     During the relevant time period, Ejindu submitted claims for reimbursement from Medicaid for Ensure, PediaSure, Boost, and Glucerna on behalf of Joy Medical and AsaAsa or instructed and supervised the submission of such claims by the administrative assistant and biller for Joy Medical and AsaAsa.

64.     Ejindu instructed the administrative assistant and biller for Joy Medical and AsaAsa to bill Medicaid for Ensure, PediaSure, Boost, and Glucerna by entering the HCPCS codes B4157 and B4162 into NC Tracks.

65.     The administrative assistant and biller for Joy Medical and AsaAsa followed Ejindu's instructions and entered HCPCS codes B4157 and B4162 into NC Tracks to bill for Ensure, PediaSure, Boost, and Glucerna.

66.     HCPCS codes B4157 and B4162 were the wrong codes to use to bill Medicaid for Ensure, PediaSure, Boost, and Glucerna.  Codes B4157 and B4162 were

15

for formulas for inherited disease of metabolism.  Medicaid paid significantly more for codes B4157 and B4162 than for code B4152 and other lower-reimbursing codes that should have been used to bill for Ensure, PediaSure, Boost, and Glucerna.

67.     By submitting or instructing the submission of claims by Joy Medical and AsaAsa to Medicaid for Ensure, PediaSure, Boost, and Glucerna using HCPCS codes B4157 and B4162, Ejindu billed or caused Joy Medical and AsaAsa to bill Medicaid for more expensive enteral formula than were provided to Medicaid beneficiaries.

### C.    The claims that Benson Ejindu submitted or caused to be submitted to North Carolina Medicaid were "false or fraudulent" and contained "false statements."

68.     Medicaid does not reimburse providers for items or services that were not actually provided to Medicaid beneficiaries.

69.     The claims that Ejindu submitted or caused Joy Medical and AsaAsa to submit for reimbursement for Ensure, PediaSure, Boost, and Glucerna using HCPCS codes B4157 and B4162 certified that codes B4157 and B4162 were truthful and accurate.

70.     Codes B4157 and B4162 did not truthfully and accurately describe the enteral formula that was provided through Joy Medical and AsaAsa because those codes apply to specialized enteral formula for inherited disease of metabolism that neither Joy Medical nor AsaAsa provided to Medicaid beneficiaries during the relevant time period.

71.     Accordingly, the claims that Ejindu submitted or caused Joy Medical and AsaAsa to submit for reimbursement for Ensure, PediaSure, Boost, and

16

Glucerna using HCPCS codes B4157 and B4162 were false, and the statements on the claims that codes B4157 and B4162 were accurate were also false.

72.     Ejindu, through Joy Medical and AsaAsa, systemically misrepresented the type of enteral formula provided to Medicaid beneficiaries.  All of the paid claims for enteral nutritional formula submitted through Joy Medical and AsaAsa during the relevant time period used the false codes B4157 and B4162.

**D.     Benson Ejindu knew, recklessly disregarded, or deliberately ignored the falsity of the claims and statements.**

73.     In the period from at least May 19, 2017, through August 23, 2019, Ejindu actually knew, recklessly disregarded, or deliberately ignored that B4157 and B4162 were not the correct codes to bill Ensure, PediaSure, Boost, and Glucerna.

74.     Those who seek public funds are expected to know the requirements for obtaining those funds.  *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 63 (1984).

75.      Ejindu knew from the Medicaid Provider Agreement that he, doing business as Joy Medical, executed on November 14, 2012, and from the Medicaid enrollment applications that he executed or was involved in executing for AsaAsa on October 31, 2016, and May 19, 2017, that Medicaid expected providers to submit claims to Medicaid "in accordance with the rules and billing instructions in effect at the time the service is rendered," that providers were "responsible for research and correction of all billing discrepancies," were required to refund or allow Medicaid to recoup any reimbursements in excess of the amount to which he was entitled, and that all claims must be "true, accurate, and complete."

17

76.     Ejindu was familiar with the North Carolina Medicaid fee schedules for durable medical equipment.  It was evident on the face of the fee schedules that there were multiple HCPCS codes that could be used to bill Medicaid for enteral nutritional formula and that the rate of Medicaid reimbursement for enteral formula varied by code.

77.     It was evident on the face of the Medicaid fee schedules that HCPSC codes B4157 and B4162 were high reimbursing enteral formulas and that they applied to enteral formula for "special metabolic needs for inherited disease of metabolism."  It was also evident on the face of the Medicaid fee schedules that HCPCS codes B4152 and B4160 were the lowest reimbursing codes for enteral nutritional formula and applied to calorically dense formulas.

78.     Ejindu knew what type of enteral formulas were provided to Medicaid beneficiaries through Joy Medical and AsaAsa because he ordered the formulas that Joy Medical and AsaAsa provided to Medicaid beneficiaries.

79.     Order Acknowledgments for orders that Ejindu placed for Ensure and Boost notified Ejindu that HCPCS code B4152 (calorically dense formula) should be used to bill for Ensure and Boost, not codes B4157 or B4162 (for inherited disease of metabolism).  For example, an Order Acknowledgment from McKesson for Order F7105802, placed by Ejindu on December 1, 2016, for Ensure Plus Chocolate, manufactured by Abbott, identified HCPCS code B4152 (calorically dense) as the applicable HCPCS code.  Similarly, an Order Acknowledgement from McKesson for Order F7305477, placed by Ejindu on February 16, 2017, for Boost Plus Strawberry,

18

Chocolate, and Vanilla, manufactured by Nestle, identified HCPCS code B4152 (calorically dense) as the applicable HCPCS code for those products.

80. Moreover, coding guidance, during the relevant time period, by Abbott, the manufacturer of Ensure, PediaSure, and Glucerna, identified B4152, B4160, and other lower reimbursing codes as the codes applicable to Ensure, PediaSure, and Glucerna. The Abbott coding guidance did not identify B4157 or B4162 as applicable to Ensure, PediaSure, or Glucerna.

81. Similarly, coding guidance by Nestle, the manufacturer of Boost, during the relevant time period identified B4152, B4160, and other low reimbursing codes as the codes applicable to Boost. The Nestle coding guidance did not identify B4157 or B4162 as applicable to Boost.

82. In addition, the Indications for Use of Ensure, PediaSure, Boost, and Glucerna do not state that those products are indicated for use by patients with inherited diseases of metabolism. In fact, the product labeling for Ensure, PediaSure, Boost, and Glucerna state that they are not intended or suitable for patients with galactosemia, an inherited disease of metabolism.

83. On the basis of these facts, Ejindu acted knowingly in presenting or causing the submission of false claims for enteral nutritional formula through Joy Medical and AsaAsa and knowingly made or caused to be made false statements material to those false claims.

**E. Providing the medical supplies for which reimbursement is sought is material to Medicaid's decision to pay.**

84. Providing the medical services or supplies for which reimbursement is sought is a material requirement for payment from Medicaid. *See* 10A N.C.A.C. § 22F.0601 (Medicaid "shall seek full restitution for improper payments, as defined by 42 C.F.R. § 431.958"); 42 C.F.R. § 431.958 ("Improper payment means any payment that should not have been made or that was made in an incorrect amount … and includes … any payment for services not received.").

85. In the Medicaid Provider Agreement that Ejindu, doing business as Joy, executed on November 14, 2012, he agreed claims would be submitted to Medicaid "in accordance with the rules and billing instructions in effect at the time the service is rendered," that he was "responsible for research and correction of all billing discrepancies," that all claims must be "true, accurate, and complete;" and that he would "refund or allow the Department to recoup or recover" any amounts received in error or excess of the amount to which he was entitled.

86. As the operator of Joy Medical and AsaAsa, Ejindu submitted or instructed the biller for Joy and AsaAsa to submit claims to Medicaid, in the period from May 19, 2017, through August 23, 2019, for high-reimbursing enteral formula for "special metabolic needs for inherited disease of metabolism" while knowing that neither Joy Medical nor AsaAsa were actually providing formula for inherited disease to Medicaid beneficiaries. The individual claims submitted or caused to be submitted by Ejindu to Medicaid are attached hereto as Exhibit A, which is incorporated by reference as if fully set forth herein.

20

87.     When Ejindu submitted or caused the submission of false claims to Medicaid for enteral formula for "special metabolic needs for inherited disease of metabolism," in the period from May 19, 2017, through August 23, 2019, Medicaid did not have actual knowledge that formula for inherited disease was not being provided to Medicaid beneficiaries.

88.     Compliance with the requirement that a Medicaid participating provider supply the goods for which he bills goes to the essence of the bargain between the supplier and the Medicaid program. When Medicaid pays a provider for medical supplies for Medicaid beneficiaries, it does so with the expectation that the supplies being billed were in fact received by the beneficiaries.

89.     For these reasons, the United States routinely pursues cases, like this one, alleging that entities or individuals knowingly submitted or caused the submission of claims for reimbursement from government health care programs that were false because the claims sought reimbursement for more expensive items or services than were actually provided.

90.     For example, in November 2011, the United States settled a False Claims Act matter involving allegations that a physician practicing in the Western District of North Carolina knowingly billed North Carolina Medicaid for more expensive services than she provided to beneficiaries. *See* https://www.justice.gov/archive/usao/ncw/pressreleases/2011/Charlotte-2011-11-15-lane.html

91. In June 2012, the United States settled a case, *United States ex rel. Granger v. NextCare, Inc.*, No. 3:09-cv-535 (W.D.N.C.), involving allegations that an operator of urgent care facilities with locations in the Western District of North Carolina submitted upcoded claims to North Carolina Medicaid for urgent care medical services. *See* https://www.justice.gov/opa/pr/arizona-based-nextcare-inc-pay-us-10-million-resolve-false-claims-act-allegations

92. In February 2014, the United States settled a case, *United States ex rel. Schmasow v. EndoGastric Solutions, Inc.*, No. 1:12-cv-00078 (D. Mont.), involving allegations that a medical device manufacturer caused health care providers to bill for less invasive procedures involving the manufacturer's device using codes applicable to more invasive procedures, which provided a higher level of reimbursement. *See* https://www.justice.gov/opa/pr/washington-based-medical-device-manufacturer-pay-525-million-settle-allegations-causing-false

93. In January 2018, the United States settled a case, *United States ex rel. Norris v. Anderson*, No. 3:12-cv-00035 (M.D. Tenn.), involving allegations that an operator of four pain clinics caused the clinics to bill Medicare for upcoded claims for office visits that were not reimbursable at the levels sought. *See* https://www.justice.gov/opa/pr/tennessee-chiropractor-pays-more-145-million-resolve-false-claims-act-allegations

94. In June 2021, the United States settled a False Claims Act matter involving allegations that a medical practice billed federal health care programs for services at a higher rate of reimbursement than it would be entitled to for the service

actually provided.   *See* https://www.justice.gov/usao-wdtx/pr/justice-department-reaches-settlement-agreement-physicians-group-el-paso-over

95.    Ejindu's conduct, as alleged above, was not a minor or insubstantial violation of the Medicaid requirements, and instead was a systematic effort to receive the highest level of Medicaid reimbursement for enteral formula by misrepresenting on the claims that a higher cost, specialized formula was provided to Medicaid beneficiaries, when it was not.

96.    A reasonable person would conclude that the Medicaid requirements to submit truthful and accurate claims for the goods actually provided are material to Medicaid's decision to pay the claims.

97.    Ejindu had actual knowledge, recklessly disregarded, or acted in deliberate indifference to whether the Medicaid requirements to submit truthful and accurate claims were material to Medicaid's payment decision.

### F.    False claims and statements made or caused to be made by Benson Ejindu.

98.    In the period from May 19, 2017, through January 17, 2018, Ejindu, through Joy Medical, submitted or caused to be submitted a total of 529 claims, with 431 of the claims being for enteral nutritional formula using HCPCS code B4157, and 98 of the claims being for enteral nutritional formula using HCPCS code B4162. Exhibit A, Pages 1-8.  Medicaid paid $284,572.41 for these claims.  Exhibit A, Page 8.

99.    In the period from June 7, 2017, through August 23, 2019, Ejindu, through AsaAsa submitted or caused to be submitted a total of 2,071 claims, with

23

1,468 of the claims being for enteral nutritional formula using HCPCS code B4157, and 603 of the claims being for enteral nutritional formula using B4162. Exhibit A, Pages 9-35. Medicaid paid $1,568,878.47 for these claims. Exhibit A, Page 35.

100. Each claim alleged in Paragraphs 98 and 99 and identified in Exhibit A was false or fraudulent under the FCA and NCFCA because enteral formula for "special metabolic needs for inherited disease of metabolism" was not provided to the Medicaid beneficiaries. In addition, each claim contained the following material false statements made or caused to be made by Ejindu: (i) the false statement that the code B4157 or B4162 submitted on the claim represented the correct type of enteral formula that had been provided to the beneficiary, when it did not; and (ii) the false statement that the claim was "true, accurate, and complete," when it was not.

101. The allegations below and in Exhibit B, which is incorporated by reference as if fully set forth herein, contain specific representative examples of false claims and statements made or caused to be made by Ejindu. [1]

**Representative Claim 1**

102. Using the business name Joy Medical, Ejindu submitted or caused to be submitted claim no. 1715307435250000 for 315 units to Medicaid for enteral formula for Medicaid beneficiary V.B. on June 2, 2017, with a date of service of June 1, 2017. The claim sought reimbursement using billing code B4157, which corresponds to enteral formula for "special metabolic needs for inherited disease of metabolism." The

_____

[1] To protect patient privacy, patient names are omitted from this complaint and its exhibits. The Governments will provide Ejindu with the names of the patients under separate cover.

claim, the billing code, and the statement that the claim was "true, accurate, and complete" were false because enteral formula for "special metabolic needs for inherited disease of metabolism" was not provided to beneficiary V.B. on or about June 1, 2017. Joy Medical was paid $620.55 for beneficiary V.B., claim no. 1715307435250000, to which it was not entitled.

### **Representative Claim 2**

103.    Using the business name Joy Medical, Ejindu submitted or caused to be submitted claim no. 1719508990910000 to Medicaid for 288 units of enteral formula for Medicaid beneficiary H.M. on July 14, 2017, with a date of service as July 12, 2017. The claim sought reimbursement using billing code B4162, which corresponds to enteral formula for "special metabolic needs for inherited disease of metabolism" for pediatric patients. The claim, the billing code, and the statement that the claim was "true, accurate, and complete" were false because enteral formula for "special metabolic needs for inherited disease of metabolism" was not provided to beneficiary H.M. on or about July 12, 2017. Joy Medical was paid $567.36 for beneficiary H.M., claim no. 1719508990910000, to which it was not entitled.

### **Representative Claim 3**

104.    Using the business name AsaAsa, Ejindu submitted or caused to be submitted claim no. 1901710748100000 to Medicaid for 324 units of enteral formula for Medicaid beneficiary K.D. on January 17, 2019, with a date of service as January 17, 2019. The claim sought reimbursement using billing code B4157, which corresponds to enteral formula for "special metabolic needs for inherited disease of metabolism." The claim, the billing code, and the statement that the claim was "true,

25

accurate, and complete" were false because enteral formula for "special metabolic needs for inherited disease of metabolism" was not provided to beneficiary K.D. on or about January 17, 2019. AsaAsa was paid $1,208.52 for beneficiary K.D., claim no. 1901710748100000, to which it was not entitled.

### Representative Claim 4

105. Using the business name AsaAsa, Ejindu submitted or caused to be submitted claim no. 1910206978950000 to Medicaid for 210 units of enteral formula for Medicaid beneficiary A.R. on April 12, 2019, with a date of service as April 11, 2019. The claim sought reimbursement using billing code B4162, which corresponds to enteral formula for "special metabolic needs for inherited disease of metabolism" for pediatric patients. The claim, the billing code, and the statement that the claim was "true, accurate, and complete" were false because enteral formula for "special metabolic needs for inherited disease of metabolism" was not provided to beneficiary A.R. on or about April 11, 2019. AsaAsa was paid $810.60 for beneficiary A.R., claim no. 1910206978950000, to which it was not entitled.

### G.  Benson Ejindu is liable to the United States and the State of North Carolina for damages and penalties.

106. North Carolina Medicaid paid a total of $1,853,450.88 for claims that Ejindu submitted or caused to be submitted through Joy Medical and AsaAsa for enteral nutritional formula for inherited metabolic disorders that was not actually provided to Medicaid beneficiaries. These claims are identified in Paragraphs 98 through 99 above and Exhibit A. Ejindu is thus liable under the FCA and NCFCA

for trebled damages of $5,560,352.64 ($1,853,450.88 x 3). *See* 31 U.S.C. § 3729(a)(1); N.C.G.S. § 1-607(a).

107. In addition, Ejindu submitted or caused the submission through Joy Medical and AsaAsa of a total of 2,600 claims in batches on a total of 317 submission dates. *See* Exhibit A, Page 35. Ejindu is thus liable under the FCA and NCFCA for a civil penalty on each of the 317 batch submissions, at a minimum. *See* 31 U.S.C. § 3729(a)(1); N.C.G.S. § 1-607(a).

108. Penalties assessed after February 12, 2024, for violations that occurred after November 2, 2015, are currently calculated at a minimum of $13,946.00 per violation and a maximum of $27,894.00 per violation pursuant to 31 U.S.C. § 3729(a)(1), N.C.G.S. § 1-607(a), and 28 C.F.R. § 85.5, and are expected to be further adjusted for inflation in the future. As a result, the total penalty for the 317 batch submissions currently ranges from $4,420,882.00 ($13,946.00 x 317) to $8,842,398.00 ($27,894.00 x 317). *See* 31 U.S.C. § 3729(a)(1); N.C.G.S. § 1-607(a); 28 C.F.R. § 85.5.

109. Ejindu is therefore liable to the United States and the State of North Carolina for treble damages of $5,560,352.64, plus, at a minimum, penalties ranging from $4,420,882.00 to $8,842,398.00.

**FIRST CAUSE OF ACTION**
**(False or Fraudulent Claims Against Benson Ejindu)**
**(False Claims Act, 31 U.S.C. § 3729(a)(1)(A))**

110. The United States re-alleges and incorporates by reference paragraphs 1 through 109 of the complaint as forth above as if fully set forth here.

111. Defendant Benson Ejindu presented or caused to be presented materially false or fraudulent Medicaid claims for payment for enteral nutritional formula that was not actually provided to Medicaid beneficiaries, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

112. Ejindu presented or caused such claims to be presented with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

113. The United States sustained damages because of Ejindu's wrongful conduct.

### SECOND CAUSE OF ACTION
**(False Records or Statements Material to**
**False Claims Against Benson Ejindu)**
**(False Claims Act, 31 U.S.C. § 3729(a)(1)(B))**

114. The United States re-alleges and incorporates by reference paragraphs 1 through 109 of the complaint set forth above as if fully set forth here.

115. Defendant Benson Ejindu made, used, or caused to be made false statements material to false claims, in violation of 31 U.S.C. § 3729(a)(1)(B), namely, that (i) HCPCS codes B4157 or B4162 submitted on Medicaid claims for payment for enteral nutritional formula represented the correct type of enteral formula that had been provided to the beneficiaries; and (ii) false statements that the claims were truthful and accurate. These false statements were made or caused to be made for the purpose of getting false or fraudulent claims paid, and the Medicaid payment of the false and fraudulent claims was a reasonably foreseeable consequence of Ejindu's

actions. These false statements were material to Medicaid payment of the false claims.

116. Ejindu made or caused such false statements with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

117. The United States sustained damages because of Ejindu's wrongful conduct.

**THIRD CAUSE OF ACTION**
**(False or Fraudulent Claims Against Benson Ejindu)**
**(North Carolina False Claims Act, N.C.G.S. § 1-607(a)(1))**

118. The State of North Carolina re-alleges and incorporates by reference paragraphs 1 through 109 of the complaint as forth above as if fully set forth here.

119. Defendant Benson Ejindu presented or caused to be presented materially false or fraudulent Medicaid claims for payment for enteral nutritional formula that was not actually provided to Medicaid beneficiaries, in violation of the North Carolina False Claims Act, N.C.G.S. § 1-607(a)(1).

120. Ejindu presented or caused such claims to be presented with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

121. The State of North Carolina sustained damages because of Ejindu's wrongful conduct.

## FOURTH CAUSE OF ACTION
### (False Records or Statements Material to
### False Claims Against Benson Ejindu)
### (North Carolina False Claims Act, N.C.G.S. § 1-607(a)(2))

122.    The State of North Carolina re-alleges and incorporates by reference paragraphs 1 through 109 of the complaint as set forth above as if fully set forth here.

123.    Defendant Benson Ejindu made, used, or caused to be made false statements material to false claims, in violation of N.C.G.S. § 1-607(a)(2), namely, that (i) HCPCS codes B4157 or B4162 submitted on Medicaid claims for payment for enteral nutritional formula represented the correct type of enteral formula that had been provided to the beneficiaries; and (ii) false statements that the claims were truthful and accurate.  These false statements were made or caused to be made for the purpose of getting false or fraudulent claims paid by Medicaid, and the payment of the false and fraudulent claims was a reasonably foreseeable consequence of Ejindu's actions.  These false statements were material to Medicaid payment of the false claims.

124.    Ejindu made or caused such false statements with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

125.    The State of North Carolina sustained damages because of Ejindu's wrongful conduct.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment Against Benson Ejindu)

126.     The United States and the State of North Carolina re-allege and incorporate by reference paragraphs 1 through 109 of this complaint set out above as if fully set forth here.

127.     This cause of action is brought against Defendant Benson Ejindu under the common law by the United States and the State of North Carolina for recovery of monies by which Benson Ejindu has been unjustly enriched.  Medicaid conferred benefits on Benson Ejindu in the form of payments for claims that were not reimbursable because the claims sought reimbursement for more expensive enteral formula than provided.  Benson Ejindu appreciated such benefits, and under the circumstances alleged in the complaint, acceptance and retention of such ill-gotten gains and benefits by Ejindu would be inequitable.

128.     Ejindu was unjustly enriched at the expense of the United States and the State of North Carolina in an amount to be determined, which, under the circumstances, in equity and good conscience, should be returned to the United States and the State of North Carolina.

## SIXTH CAUSE OF ACTION
### (Payment By Mistake Against Benson Ejindu)

129.     The United States and the State of North Carolina re-allege and incorporate by reference paragraphs 1 through 109 of the complaint as if fully set forth herein.

130.     This cause of action is brought against Benson Ejindu under the common law by the United States and the State of North Carolina for recovery of

31

monies paid by the United States to Joy Medical and AsaAsa as a result of mistaken understandings of fact. Ejindu received and retained the benefit of some of those monies as the owner of Joy Medical and the operator of AsaAsa.

131. The false claims that Ejindu submitted or caused to be submitted were paid by Medicaid based on mistaken or erroneous understandings that the claims were truthful and the billing codes accurately described the enteral formulas that had been provided to the Medicaid beneficiaries.

132. The United States and State of North Carolina, acting in reasonable reliance on the truthfulness of the claims and the statements made or caused to be made by Ejindu, paid Joy Medical and AsaAsa certain sums of money to which they were not entitled, some of which was passed to Ejindu. Ejindu is thus liable to account for and pay such amounts to the United States and State of North Carolina.

## PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, the United States and the State of North Carolina respectfully pray for judgment in their favor as follows:

I.  As to the First and Second Causes of Action (False Claims Act) against Benson Ejindu for: (i) statutory damages in an amount to be established at trial, trebled as required by law, and such penalties as are required by law; (ii) the costs of this action, plus interest, as provided by law; and (iii) any other relief that this Court deems appropriate, to be determined at a trial by jury.

II. As to the Third and Fourth Causes of Action (North Carolina False Claims Act) against Benson Ejindu: (i) statutory damages in an amount

32

to be established at trial, trebled as required by law, and such penalties as are required by law; (ii) the costs of this action, plus interest, as provided by law; and (iii) any other relief that this Court deems appropriate, to be determined at a trial by jury.

III.    As to the Fifth and Sixth Causes of Action (Unjust Enrichment and Payment by Mistake) against Benson Ejindu for: (i) an amount equal to the amount that Benson Ejindu was unjustly enriched or retained illegally; (ii) the costs of this action, plus interest, as provided by law; and (iii) any other relief that this Court deems appropriate, to be determined at a trial by jury.

IV.    All other and further relief as the Court may deem just and proper.

The United States and the State of North Carolina hereby demand a jury trial on all claims alleged herein.

Dated this 11th day of January, 2025.

Respectfully submitted,

DENA J. KING
UNITED STATES ATTORNEY

**s/Matthew R. Petracca**
Matthew R. Petracca
Special Assistant United States Attorney
Medicaid Investigations Division
North Carolina Dept. of Justice
5505 Creedmoor Road, Suite 300
Raleigh, N.C. 27612
Tel.: (919) 881-2345
Fax: (919) 571-4837
Email: mpetracca@ncdoj.gov
N.C. Bar No. 53350

33

**s/Holly H. Snow**
Holly H. Snow
Assistant United States Attorney
227 West Trade Street, Suite 1650
Charlotte, NC 28202
Tel: (704) 338-3142
Fax: (704) 227-0248
Email: Holly.H.Snow@usdoj.gov
N.C. Bar No. 33996

**–and—**

JEFF JACKSON
NC ATTORNEY GENERAL

**s/Matthew R. Petracca**
Matthew R. Petracca
Special Deputy Attorney General
Medicaid Investigations Division
North Carolina Dept. of Justice
5505 Creedmoor Road, Suite 300
Raleigh, N.C. 27612
Tel.: (919) 881-2345
Fax: (919) 571-4837
Email: mpetracca@ncdoj.gov
N.C. Bar No. 53350